We'll hear argument first this morning in Case 11-9335, Aleyne v. United States. Ms. McGuire. Mr. Chief Justice, and may it please the Court, this case is about who gets to decide the facts that trigger a mandatory minimum sentence. Any fact that entitles a prosecution, by law, to a sentence more severe than a judge could otherwise impose must be found by the jury beyond a reasonable doubt. Under Harris, the government is entitled to a minimum sentence. So could you address an issue that's very important to me, the one of stare decisis? And so that — hone in on that. Yes, Justice Sotomayor. I do not believe that stare decisis poses a problem for the Court in this case because Harris was a plurality opinion. And while four of the justices found that — I'm sorry, five of the justices voted to uphold McMillan, only four of the justices found that McMillan was consistent with the printing. And so we have a plurality opinion, and for a constitutional position, we do not believe that Harris is— Sotomayor, well, the problem is, whether you're right or wrong, and you're absolutely right, it was a plurality opinion, your adversary says States have passed laws relying on it, the Federal system is now structured around it. Why isn't the damage as great as they claim? Potential damage, I should say. Well, first of all, I would just note that even though McMillan was decided in 1986, there is nothing in the legislative history that indicates that Congress referred on McMillan when it passed 924C. In addition, 924C is silent as to who should be the fact finder that triggers the mandatory minimum. And finally, in the McMillan case, that was not really a Sixth Amendment case. Address, please, the practical consequences. Certainly. Sotomayor, how many Federal courts, are you aware, are already charging the 924C facts to a jury, notwithstanding the fact that it's not required? Yes. I would say there is little to no practical effect of the court is to adopt a rule, because the majority of the Federal courts are already and Federal prosecutors are already alleging these facts in the indictment and proving them to a jury beyond a reasonable doubt. And I think that this case is the exact example of that. It was alleged in the indictment, it went to the jury, the jury got a special verdict form, so there is no difficulty in implementing this rule. Is it your position that a decision of this Court is not entitled to stare decisis protection if there isn't a majority opinion in that case? Yes, Your Honor, I do not believe that Harris has precedential value because it is a plurality opinion. And I can think of some pretty important decisions of this Court that were not the result of a majority opinion. You want us to adopt that as a blanket rule? No, Your Honor, but I would note that in constitutional questions like this one, stare decisis is at its weakness, weakest. I would also. All right. Constitutional decisions of this Court not decided with a majority opinion. No stare decisis effect. That's your argument? Well, and also, Your Honor, what I think is significant in this case in terms of the issue of stare decisis is that McMillan was not a Sixth Amendment case. McMillan was decided more on due process grounds, and the only discussion of the Sixth Amendment in McMillan comes in the last paragraph when it talks to the fact that the defendant has no right to jury sentencing. And so for those reasons, we do not believe that stare decisis poses a problem for Harris. You haven't distinguished McMillan. You've distinguished Harris. How do you distinguish McMillan? Your only grounds for distinguishing that is it was not a Sixth Amendment case, even though the opinion refers to the Sixth Amendment? Well, Your Honor, it does, in fact, refer to the Sixth Amendment in the very last paragraph. But what McMillan was mostly concerned about was a due process question. I care about mostly the issue as whether McMillan was a Sixth Amendment case, in part or in whole. I don't know how you can say it wasn't. We don't decide cases on what a case mostly says. We decide on what it says. That's why you don't have to take the position that there's no stare decisis effect. A unanimous, recent unanimous decision of this Court, obviously, will carry more weight than one that had a plurality opinion, so you don't have to say. It isn't a question of yes or no. It's a question of the degree of respect that we would give to a formal decision. I think that that is exactly right, Justice Ginsburg. And, in fact, the other factors that the Court considers when looking at stare decisis is what were the margins of vote on the previous cases. And McMillan was decided on a 5-4 decision, whereas Harris, as we've noted, was a plurality decision. Both opinions were found over spirited dissents. They have been criticized by this Court and the lower courts. And in all of those instances, we believe that stare decisis is not a key thing. Alito, I think it's important for this Court to have a consistent doctrine of stare decisis. The doctrine can't be we'll overrule decisions that we don't like, but we'll stick with decisions that the majority does like. So I'm still looking for your understanding of what stare decisis means in constitutional cases. Now, with the suggestion of Justice Ginsburg, I gather that your position is if it's a narrow decision, then it's stare decisis has less weight. Is that it? Now, what other factors? So it has less weight. Why isn't it controlling, though? Why does it have insufficient weight here? Because, Justice Alito, another thing that you look to when you're considering a stare decisis is whether or not the rule is workable, whether or not the prior decision was badly reasoned. And those are other factors that the Court can consider. And if you look at this Court's Sixth Amendment jurisprudence as it's developed since Apprendi, then in Booker, then in Blakely, then in Cunningham, what we are asking for today is a lot more. Why is this not workable? I mean, you can argue about whether it was right or wrong. You can argue about whether it's created some incongruity in the system. But haven't the last number of years suggested that it's perfectly workable, everybody knows what they're supposed to do, everybody does it? Why is this not workable? Well, the Harris rule is not workable on a practical level, because what happens under the Harris rule is the government is entitled to a fact that drives a more severe punishment that never goes to the jury. And what we are asking here is that the Court find that where there is a fact that triggers a mandatory minimum, that that fact be found by the jury. That sounds like an argument that it's wrong, and that is, of course, the first step in the stare decisis analysis. It doesn't sound, to me, responsive to Justice Kagan's question, in what sense is it unworkable? Well, I think it becomes unworkable in the drug cases, Your Honor, and in the 9841 statute, because what you have there is you have in some circuits people alleging drug weight, but in other circuits you have what they call this mixing and matching. And as long as the statutory maximum does not exceed 20 years, the prosecutors are not alleging the drug weights in the indictment. And that becomes unworkable and quite confusing to the courts, and the lower courts have criticized the Harris rule, primarily in cases like Krieger and others that we cited in our amicus brief, that the rule is somewhat unworkable. Why wouldn't that be a problem if the question had to be decided by the jury? Why does requiring it to be decided by the jury eliminate that problem of the mixing or not mixing? Well, asking it to be found by a jury solves the problem, because it allows the fact to go to the jury, the jury finds it, and we have a long history in this country that jury verdicts drive punishment. And so the idea is that the punishment that somebody is open to should be driven by the jury verdict. Ginsburg. You mentioned drug weight. So you're making the argument would mean that drug weight also has to be found by the jury, because that can, the length of the sentence can depend on the drug weight. If the drug weight is going to trigger a mandatory minimum, Your Honor, yes, we would say under our rule that that would have to be alleged in the indictment and proved to the jury beyond a reasonable doubt, which, as our amicus briefs point out, is being done already in a majority of circuits throughout the country. And so this is not going to put any additional burden on the prosecutors to be doing this, and fundamentally what it does is that it levels the playing field, because what it does in trial situations is it allows the defendant to know exactly what it is that the government is going to prove. The government then has to bring in those witnesses at the time of trial so that they can be cross-examined on this fact that's going to trigger the mandatory minimum in their case. And so it helps level the playing field in that regard. Alito, if you were defending a case involving drug weight and your client maintained that he or she had nothing to do with these drugs, how would you proceed? Your argument would be, they're not my drugs, but if they were my drugs, they weren't they didn't weigh more than 1 kilo. Well, Justice Alito, those are strategical questions that come up in every trial case that we have. And you have to decide as a trial lawyer what your theory of the defense is going to be. It's simply going to be I wasn't there, or you may decide to challenge the drug weight. But those strategic decisions exist whether or not the Court adopts this rule or doesn't adopt it. The question was what strategic decision do you think the lawyer should make? Well, any strategic decision a lawyer makes is going to depend on the individual facts of the case. For example, Justice Alito has a real problem. Don't you put the defense in a very difficult position? You don't put the defense in a very difficult position because, in fact, if you adopt our rule, we believe that you are protecting the defendant's Sixth Amendment right to a jury, because this is a fact that is going to be triggering a mandatory minimum, and if the government has to prove it, they then have to bring in the witness to the trial who is then subject to cross-examination, which is a far more reliable rule. Kennedy. But isn't it difficult for you to say he had nothing to do with the drugs, plus the drugs didn't weigh more than a certain amount? I don't believe that that's difficult, and I believe that those are decisions that you make in every case. For example, in the case, in this case, in Mr. Lane's case, our theory of the defense is that I'm hearing that in every case, you're going to want witnesses, you're going to insist on a jury determination of the amount. That's kind of what I'm hearing. That is the rule, Justice Kennedy, that we are asking the Court to adopt, that if there is a fact that's true. Justice Alito says, why doesn't that put defense counsel in a very difficult position? Well, it doesn't put defense counsel in a difficult position at all, because  don't. Well, we're not getting very far with this. But one answer you could say in order to preserve your constitutional right, you want us to have a bifurcated trial. I thought you might say that. No, we're not we are not asking for a bifurcated trial. We are just asking that if there is one. That's good, because that's an extra problem. Ms. McGuire, can I take you to a different kind of question? Certainly. Let's assume that there were a statute and it said carrying a gun is an offense and that the range is 5 to 10 years. I realize it goes up further in the real world, but let's just say 5 to 10 years. And Congress said in setting the penalty within that range, the judge shall consider whether the defendant brandished the gun and whether the defendant discharged the gun. Now, and that's all the statute said. That would be constitutional. Is that not right? Yes, Justice Kagan. That would be constitutional because it doesn't have the mandatory effect. Okay. So it's constitutional for the judge to say 7 years because you brandished, 9 years because you discharged. So what makes it unconstitutional? What makes it a violation of the Sixth Amendment when now Congress just provides something extra in the statute? It says not just you shall consider brandishing and discharging, but if you find brandishing, you get 7, if you find discharging, you get 9. Okay. What makes that unconstitutional is because you're stripping the judge of all authority and by operation of law you are telling that judge that you must impose this penalty. Well, that seems right as a definitional matter, as a descriptive matter, but I guess the question I'm having difficulty with is why does that matter for purposes of the Sixth Amendment? The jury is doing the exact same thing, which is the jury isn't doing anything in either of my examples. So the only difference between example number one, which you said was constitutional, and example number two, is that now Congress is giving further instruction to the judge. But nothing more is being taken away from the jury, is it? Well, yes, it is, because in your second hypothetical where it is the mandatory minimum, which is exactly what we have in this case, this notion that somehow Congress is channeling discretion is a fiction, because what it does is it tells a judge you must impose 7 years and you cannot even consider what is authorized by the jury verdict in this case. And the jury verdict in this case authorized a range of 5 years as the bottom. And so what happens is when you have Congress coming in and saying that if you find this fact on a mere preponderance standard, you must impose 7 years, then you are stripping the defendant of the benefit of the full jury verdict in this case, which authorized a range that had a lower floor than that called for by the Federal Supreme Court. Sotomayor, could you repeat the first sentence you uttered in this argument? I hesitated to jump in so early, but could you repeat it verbatim? Maybe you had committed it to memory. Good counsel often does that. Thank you, Justice Scalia. My very first sentence was, this case is about who gets to decide the facts that trigger a mandatory minimum sentence. No, that wasn't it. It started in Mr. Chief Justice. I think what you said was who has to decide a fact which causes a defendant to be subject to a penalty that he would not otherwise be subject to. And the fact is that in the case of a mandatory minimum, the defendant could have been given that mandatory minimum. It was up to the judge. So this mandatory minimum does not increase the penalty to which the defendant is subject. He's subject, in Justice Kagan's example, to any penalty between 1 year and 10. The judge, even without the statute that she mentioned, could have given him 7 years because he brandished a gun. There's really no increase in the penalty to which he is exposed. And I thought that is what Apprendi addressed, any increase in the penalty to which you're exposed, so that when you decide I'm going to rob a bank, you know, you know when you go in, you're going to get between 1 and 10 years. And with a mandatory minimum, you get between 1 and 10 years. So what's the complaint as far as Apprendi is concerned? The complaint is that, in why we believe that the rule we are asking the Court to adopt, Justice Scalia, is a natural, follows the logic of Apprendi, is because in both cases you have judicial fact-finding that's leading to a more harsh sentence. In your situation you have a more harsh sentence. It isn't leading to a more harsh sentence. That's the whole point of Apprendi. Does it lead to a sentence which is greater than the judge would otherwise be authorized to impose? And in the case of a mandatory minimum, it never is. The judge could impose that if he was a hanging judge. You know, you have some hanging judges, you have some bleeding-heart judges. And what a mandatory minimum simply says is, you know, we don't care what kind of a judge you are, at least this much. But it doesn't expose the defendant to any greater penalty. He's at risk between 1 and 10 years. Well, and I think, Justice Scalia, that that's a false presumption, and I think that that's the position of the government, that somehow mandatory minimums channel discretion within a range. That is a fiction, because a judge is being told you must impose this. You have no choice. You cannot go below this. That is the whole nature of a mandatory minimum. It's not this. Sotomayor, do you have any statistics on at least 924C of how often the greater is the sentence than the absolute minimum required by law? Well, Justice Sotomayor, this Court found in O'Brien, and I think that it's also cited in the Lucas briefs and Dorsey briefs that this Court is holding, that the greater than 924C are, in fact, sentenced at the mandatory minimum. So in fact, your argument is that fixing a sentence is different than giving a judge discretion, because it ignores the fact that a judge might have given you less. That is exactly right. So in depriving you of the constitutional right to have a jury decide what your sentence could be. That is exactly right. Of having a judge decide what your sentence could be. That is exactly right. And it is further depriving you – it is depriving the defendant of liberty interest. It is imposing a stigma that it is entitling the prosecutor to a greater and more severe punishment. I'm not sure that that's – you've emphasized several times that it takes away the discretion of the judge. That seems to me to be a matter between Congress and the judiciary and not a Sixth Amendment question. Well, Mr. Chief Justice, actually the language of this Court in Apprendi said that it is unconstitutional for the legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. And that is exactly what's happening in this context. Well, Apprendi, though, did it both ways. I mean, that's the best sentence for you in Apprendi, but there are other sentences in Apprendi which more go towards what Justice Scalia suggested, that the question was increasing it above the maximum that the jury authorized. So I'm not sure that we can get this from the language of Apprendi. And I guess the question is, as a matter of principle, why – I completely understand why a defendant would care about this. The question is, does it create a Sixth Amendment violation, which is, you know, the jury has to do this, when Congress is decreasing the judge's discretion, but it's – either way, the jury isn't deciding this. Well, Justice Kagan, we do believe that the Sixth Amendment is implicated, because we think the history of the Sixth Amendment in this country shows that the role of the jury is the buffer between the citizen meant to protect and the government. And mandatory minimums give the prosecution far much power. And, in fact, if you do not adopt a rule and make the government have to prove it beyond a reasonable doubt, what happens is then the average citizen does not get the benefit of a jury verdict, and his sentence is not driven wholly by the jury verdict. Because in this case, we had a jury verdict, the government alleged the fact, we had a special verdict form, the jury failed to find that fact. As a result of that, then, the range that Mr. Lane should have been exposed was a 5-year mandatory minimum, and for the constitutional argument, assuming a maximum of life. Here, what happened then at the sentencing hearing was on a mere preponderance, the judge had to impose 7. And so we believe that is where you have the Sixth Amendment problem, because you think that's the case. Scalia You quoted Apprendi correctly as saying that the jury has to decide any fact which increases the sentence to which the defendant is exposed. That's the language you quoted, and it's accurate. Why does a mandatory minimum increase the sentence to which the defendant is exposed? He could get the mandatory minimum sentence even if there were no mandatory minimum prescribed. He's exposed to a sentence of 1 to 10 years. A mandatory minimum says you must impose 7 years if he brandishes. But the sentence to which he's exposed is 1 to 10 years, and the mandatory minimum does not change that at all. He's at risk for 1 to 10 years. Well, I understand that that may not change the exposure. What it does on a practical level is it prevents the judge from even considering anything less than the 7 years. That becomes the problem. Scalia That's true. But you must acknowledge that that's not the theory of Apprendi. Well, I think the theory of Apprendi, if you take it out to its logical step, is that if you have judicial fact-finding that is resulting in a more harsh sentence being imposed, then in fact you have a Sixth Amendment problem. And so what happens on the mandatory minimums is that if the judge finds the mandatory minimum, a more harsh sentence is being imposed because, as an example in this case, the judge could not even consider giving the 5-year floor as a mandatory minimum, which we've already noted is in fact how most criminal defendants are sentenced under the 924C statute at the mandatory minimum level. Scalia I think the logic of Apprendi is that the jury has to decide it if it increases the sentence to which the defendant is exposed, not if it eliminates some discretion of the court. He's exposed. Sotomayor How about Booker? What did Booker do? The logic of Apprendi. Justice Sotomayor, what I believe that Booker did is that Booker indicated that when you have a fact that drives a finding of fact that drives a mandatory sentence to be imposed, that obviously that was the Sixth Amendment problem. Now, I understand that you shouldn't Sotomayor Even when the statutes had a higher maximum. That is correct, Your Honor. Because the jury was – because the judge was constrained within a different maximum. That is correct, Your Honor. Is that your argument here? Yes. And so what I believe is that what Booker indicates is that it is this mandatory effect, which may – and that is why this Court found, extending Apprendi in the Booker case, that in fact the guidelines then had to become advisory. It is the mandatory effect of the fact finding that is essential in this case. Scalia It wasn't a mandatory minimum case. Booker was a case in which the maximum was increased on the basis of judge finding a fact. The maximum was increased. So under the situation in Booker, the exposure of the defendant was indeed increased on the basis of judge fact finding. Instead of 1 to 10, the statute in Booker said if you brandish a gun, you can get 15. That's a quite different situation from saying, yes, you are still on the hook for 1 to 10, but if you brandish, you've got to get 7.  Kagan Well, Justice Scalia, I think the concern in Booker was the mandatory nature of the guidelines. And while I would agree with you that this Court in its constitutional part of the Booker decision did in fact look to the increase in the maximums, it is the same problem. You have judge – judicial fact finding that is mandating a particular sentence, and that's where you have the fixed – Alito Why is Booker entitled to greater stare decisis weight than Harrison McMillan? Kagan Well, I believe that Booker is entitled to greater weight because it was more recently decided by this Court. And I also believe that it is a more recent interpretation of this Court of the principles held in Apprendi. I would like to reserve the remainder of my time. Roberts Thank you, counsel. Mr. Dreeben. Dreeben Mr. Chief Justice, and may it please the Court. This Court should adhere to its decision in Harris v. United States, which reaffirmed McMillan v. Pennsylvania, because those decisions properly respected the fact that a mandatory minimum divests the defendant of the right to judicial leniency. Sotomayor Can I go back to a simple question on the stare decisis, the practicality question? What is so impractical about letting a jury decide an issue that sets a mandatory sentence of any kind? Why are juries incapable of figuring out whether a gun was carried or branished? Why are they incapable of figuring out how many – how much drugs were sold, or whether someone was driven by any of the factors that States want to commit to judges, but the Sixth Amendment might require them to submit to juries? Dreeben Justice Sotomayor, the government's argument here is not that juries are incapable of finding facts under the Federal statutes that involve mandatory minimums. It's that Congress has sound reasons for wishing to allocate that fact-finding to the sentencing process, and that it is not unconstitutional for Congress to do so. Sotomayor But what does that have to do with the needs, the constitutional need, to make sure that juries are driving a fixed sentence of any kind? Dreeben The constitutional question, in my view, Justice Sotomayor, turns on whether there is a right to the mercy of a tender-hearted judge. That is what a defendant loses when a judge finds a mandatory minimum fact-finding. Breyer No, no, it isn't quite. I mean, the linguistic difference, I agree with Justice Scalia and I agree with you, it turns on the word exposed. I mean, if you state, Apprendi's holding, as it was just stated, this is a different case because you could, in fact, if you were the defendant, have been sentenced to that anyway. That's your argument. Dreeben Correct. Breyer Now, let's put it differently. There is a fact in the world. There's a gun or there wasn't a gun. In the Apprendi case, if the fact turns out to be gun, you could get two more years. All right? We have to go to the jury. Now, here, there's a fact in the world. Gun or not gun? If it turns out not gun, you get a lower sentence, you're good. And if it turns out to be the fact gun, you can't, the judge cannot put you in that box. He has to put you in a worse box. He has to put you in a worse box. He has to give you more than the three years, two years or one year. He has to. Okay? Now, from the point of view of the defendant, worse, or not at least as bad. From the point of view of Congress, same. They drew some lines, want a judge to administer them, and they turn on facts. And the sentence very often will turn on those facts. From the point of view of the judge, same. It's the jury decides or he decides. In the one case, his discretion is cut off to give a lower sentence. In the other case, his discretion is granted to give a higher sentence. Now, I see tremendous similarities, though I grant you the words are different. But can you just explain why the difference in the words should overcome the fact that I can't think of a difference other than those words that happen to be used in Apprendi? Dreeben, we have a chart in our brief that I think is addressed explicitly to the question that you are asking, and it's on page 36 of our brief. And it illustrates the difference between an Apprendi situation and a Harris-McMillan situation. This is the government's gray brief, and the point of the chart is this. This is page 36. Breyer, I was afraid the other side was upside down, then I saw what you meant. The point of Apprendi is a jury cannot be reduced to low-level gatekeeping. Congress cannot pass a statute that says it is a crime to assault someone, and that's punishable by 1 year in prison. But if the crime involves rape, then it's punishable by 10 years in prison. Or if the crime involves attempted murder, then it's punishable by up to life. Congress can't do that because it would diminish the role of the jury in finding the critical facts that constitute the crime that set the defendant's maximum exposure. Apprendi protects against that. In a Harris situation, the defendant is already exposed to the maximum penalty that the defendant incurs under the statute, and that's what the second column illustrates. The defendant who commits a section 924C crime knows that the defendant faces up to life in prison. When the mandatory minimum comes along, it doesn't increase the defendant's exposure to the most severe punishment he can get. It divests the defendant of a degree of judicial discretion. But the Sixth Amendment does not protect a right to judicial discretion. Breyer, I'm sorry. Breyer, that's the you've used all the words which do make the difference in your mind. But my question is why should those words make a difference? Look, in the one case, I'll be repeating myself, but I want you to see it. In the one case, presence of a fact or not means that the defendant goes into a higher sentencing box. In the other case, presence of the fact or not means that he cannot go into the low sentencing box. In the one case, he cannot go into the low sentencing box. In the other case, he can go into the high sentencing box. I got that difference. My only problem is why does it make a difference? It matters because the Sixth Amendment protects a right to a jury trial. It does not protect a right to judicial leniency. No, it's not. Well, you can call it judicial leniency, but you could call the other judicial harshness. I mean, what is in fact turning out is no, because in the other situation, it protects the right of the jury to determine the ingredients of the crime that Congress has determined exposed. And here we have the ingredients of the crime that Congress has determined that you have to get the 5 years. Well, we know. I mean, in the one case, you can say all that Apprendi did, it never should have been decided. You know, some of us thought that, because, in fact, all you're talking about there is that you are stopping the judge from exhibiting his otherwise discretion towards harshness, and that's a matter for judges. I've heard all these arguments before, you see, and I've just heard them in the context of harshness, and now I don't know why changing it to leniency makes them somehow more relevant. They weren't apparently relevant in the first situation, so why are they relevant in this one? They weren't relevant in the first situation, because if there is no cap on the maximum that a judge could impose based on judicial fact-finding, the role of the jury can be shrunk to what the Court has called low-level gatekeeping. That can never happen under a statute that increases only the mandatory minimum. Kagan Well, is that right, Mr. Dreeben? I think that's a great question. Is the jury functioning as a low-level gatekeeper under the Harris rule? Because I could make the argument that, in fact, it is. You know, you take a statute and it says 5 and up for carrying and 7 and up for brandishing, right? And this isn't even a hypothetical. This is pretty close to this case. It goes to the jury. The jury says we think he was carrying. We do not think that he was brandishing, all right? And then it goes to the judge. And now the judge says, you know what, if I had my druthers, I would only give 5 years. If I had my druthers, I absolutely would defer to the jury verdict. But I can't defer to the jury verdict, because Congress has said, I have to make this special fact finding, and the truth of the matter is, I think he did brandish. And so I have to give 7 years. So the judge is not deferring to the jury, and he's not deferring to the jury when he would prefer to do so. I guess the question is, isn't that, in every practical sense, doesn't the mandatory minimum effectively increase the maximum punishment that the defendant otherwise would get? Well, it certainly doesn't increase the maximum punishment that's authorized under the statute, and it doesn't prevent the judge from making the exact same finding by a preponderance of the evidence that the jury did not make beyond a reasonable doubt, and giving 7 years, even if there were no mandatory minimum. Yes, but what I'm suggesting is that in the world of judges, you know, the graph you wrote has this very little difference in the Harris situation between 5 and 7. But in fact, most judges want to give 5. I mean, that's the truth of the matter, that, you know, nobody's giving a 97-year sentence. So the action in the criminal justice system is at this lower range. And at this lower range, what the mandatory minimums do is effectively tell a judge that they cannot defer to a jury verdict. Well, it's first of all not entirely accurate that judges do not give higher sentences than the minimum. There are plenty of cases in which they do so. If the 920- But I'm sure there are plenty of cases. All I'm saying is that it's not the unusual case to find ourselves in exactly this position, where the judge wants to give 5, the jury wants to give 5, the judge can't defer to the jury's verdict that it should be 5. But taking away judicial discretion to treat a fact within the range differently than what Congress wants doesn't infringe the jury trial right. The jury can find facts by a reason — beyond a reasonable doubt. But when the judge is at sentencing, he is not operating under that burden. So the fact-finding role of the jury— But you could say that with reference to the maximum. Everything you said could be applied to the maximum. An apprentice says you can't say that. I don't think that it's quite true that everything that I said applies to the maximum, Justice Kennedy, because as the plurality opinion in Harris explained, once the court has been confronted with a defendant who's convicted, the judge's discretion extends up to the statutory maximum. He can't use his fact-finding ability to increase the defendant's exposure to criminal punishment. Mandatory minimums can never do that. The defendant is already exposed to the sentence that the judge could give. And I grant you, Justice Kagan, that some judges might choose to give a lower sentence. But the fact that they might choose to reflects judicial leniency, tenderheartedness, something that the Sixth Amendment doesn't speak to. How about a deference to the jury's finding? I mean, in this very case, wasn't it so that the judge said, I could just say 7 years because it's within the range, but it would be dishonest of me to do that, wouldn't it? I have to say 7 because it's the mandatory minimum. I think this is a case where the effect is shown graphically, that the judge says, I'm stuck with the 7, I would prefer 5, that's what the jury would need me to do. But I'm, my hands are tied, I cannot respect the jury's finding. I think, Justice Ginsburg, that the judge said he would be intellectually honest and not ignore the fact that the finding of brandishing did trigger the mandatory minimum. He did not say, I otherwise would have given 5. And I think that this case is a case where the judge, when faced with this decision, has before him a jury finding. I mean, that's true. It's not the usual case, Justice Scalia. The Petitioner is asking these cases to be thrown out even if there's been no jury finding. Correct. And the judge says, you know, I have to decide whether he brandished or not. I think he brandished. But I, you know, the Petitioner here wants to say the judge cannot consider himself bound by a mandatory minimum. It seems to me the unusual case in which you have a jury finding that the judge must ignore in, he actually doesn't ignore it, he goes along with it. The jury may well be right that it's impossible to prove beyond a reasonable doubt that the felon brandished a gun, but it's quite easy to say that it's very likely he branded a gun, brandished a gun, which is what the judge has to find. So he's not even ignoring the jury finding. No. There's no inconsistency between it. And I think if you look at the way this case evolves, it's not even clear that the jury rejected brandishing. What's very interesting about this case is it's possibly the best illustration of the unfairness problem that Justice Alito alluded to and that Justice Breyer has written about in his opinions. The issue at trial in this case was identity. Was the defendant actually the person sitting in the car while his accomplice walked up to the victim and put a revolver into his neck and asked for money? That was the issue at trial. There was no discussion of brandishing whatsoever. Nobody focused on it. And it allowed the defendant, after the jury rejected his identity argument, to go to the judge and say, even though the jury has now found that my guy did it, he could not have foreseen that a gun would have been used. Sotomayor, can I go back to a point you made earlier? You talked about a legislature not attempting to supplant the jury's role on the maximum. You don't see the same danger. We started out in a country where almost all sentencing was in discretion of the judge. Whatever crime you committed, the judge could decide where to sentence you. As Apprendi and its subsequent progeny laid out, these sentencing changes that have come into existence have really come into existence the latter half of the last century. Don't you fear that at some point the legislature will go back to the old system that's supplanting the jury by just saying what it said in 924C? Every single crime has a maximum of life. And every single fact that's going to set a real sentence for the defendant, a minimum, we're going to let the judge decide by a preponderance of the evidence. The bottom line of my question is, when Apprendi was decided, what should be the driving force of protecting the jury system? The deprivation of discretion, whether that's permissible or not, or whether a sentence is fixed in a range, whatever it might be, by a jury. What's the better rule to keep both extremes from happening? I think, Justice Sotomayor, that the Court recognized in Apprendi that its rule was limited and to a certain extent could be evaded by legislatures if they were inclined to do so. Mr. Dreeben, I think that history is wrong. In fact, the way the country started, there was no judicial discretion. There were simply fixed penalties for crimes. If you stole a horse, you were guilty of a felony and you would be hanged. That's where we started. And I would think that the risk involved is whether if we come out the way that the Petitioner here urges us to do, legislatures will consider going back to where we started from and simply saying, if you brandish, you get 7 years, period, with no discretion in the judge. That, it seems to me, is the greater risk. Well, Justice Scalia, I agree in part with both you and Justice Sotomayor on history. In fact, if you look at the 1790 Crimes Act that the First Congress passed, many of the sentences are determinate sentences. Others of the sentences were prescribed up to a certain amount of years. And within that, it was well understood that judges would find facts to graduate the penalties according to the gravity of the crime. And what the legislatures have done in the 20th century innovation of mandatory minimums within an otherwise authorized range, as you have with 924C, is say, we would prefer that judges take into account brandishing and discharging as under Justice Kagan's hypothetical statute, but we would like to do that in a uniform manner. We know that they can find, by a preponderance of the evidence, that brandishing exists. We know that many, if not most, judges would consider that worse than simple possession of a firearm in a crime of violence. And we want judges to behave consistently. By prescribing consistency, they are acting in accord with the historical tradition of having determinate sentences, a tradition that this Court held in Chapman v. Sotomayor. Sotomayor, the historical – you've said earlier that most of the historical evidence was that determinate sentences would be decided by juries. They found facts and the determinate sentence was given. And there was no judicial discretion, which I think makes the case that the judicial discretion is not a mandatory minimum. So what's the judicial discretion now? You find by a preponderance of the evidence in a mandatory minimum makes you give seven. So where's the judicial discretion? The judicial discretion is what the defendant is losing. He's not losing the right to a jury trial because the very same verdict authorizes the judge to find brandishing and impose seven years. Sotomayor, do you think for a defendant in a constitutional right that they're more – that it's constitutional to have a determinate sentence at seven and still constitutional and make the jury find it by a – beyond a reasonable doubt, and that it's still constitutional to have a determinative sentence of seven years but have the jury find it by a preponderance of the evidence? To have the jury find it by a preponderance of the evidence? Sotomayor, those are equal? It's not just my position that it's constitutional for a judge to find mandatory minimum triggering facts by a preponderance. I'm sure that a legislature could allocate that to a jury. No, I know we said it in Paris. The question here before us today is. Yes. And I think that not only does it not contradict any decision of this Court to allow the judge to make those findings, it doesn't contradict the principle behind the jury trial right or the right to proof beyond a reasonable doubt. Now, look, look, here's another way of putting the same point. With the mandatory minimum, the judge can't go below the five years, okay? But you say, well, he could have gone below the five years anyway, couldn't he have? I mean, you could – he could have given you the five years anyway. Sorry. He could have given you the five years anyway. That's your point? Correct. All right. He could have given you the five years, could have given you the five years if you'd been convicted of a different crime. And that's the difference between this and a print. Why does that make a difference? The best way I thought of putting it is the heading on page 6 of their reply brief is almost right, I think. I mean, I doubt – it says it's permitting judges to find facts by a preponderance of the evidence that compels sentences higher than a set of those permitted by the jury's verdict. That's exactly what's going on here. Well, and I know – and I want to know, what is it? And the trouble is we're going to go in circles. You're just going to say, well, he could have given the same sentence anyway, and I'm going to say, well, so what? Why does that matter? It's descriptively accurate, but it says nothing about the constitutionality of the procedure. And I think that it's very important to focus not only on the fact that stereodicysis is in play, but that Apprendi has been a very history-driven area of the law. Last term when the Court extended Apprendi to fines, it has found an ample historical basis for doing so. In this case, by comparison, there is no historical showing that would justify extending Apprendi to fines. Not only is there no direct analogy to a 924c-type statute, but the three pillars of their historical argument are extremely weak and strained analogies. The first one is simply that to get a statutory crime that was parallel to a common law crime but differed, the prosecutor had to charge all of the elements of the statutory crime in the indictment. That says nothing about mandatory minimum sentencing. The sentence – the second pillar of their historical argument is the procedure called benefit of clergy, which was a form of what Blackstone called a statute pardon that allowed a defendant to avoid a capital sentence. In the first Crimes Act, in Section 31 in 1790, Congress said benefit of clergy shall not exist in the United States for any crime punishable by a capital sentence. Benefit of clergy has never been part of this country's Sixth Amendment heritage. It was abolished before the Sixth Amendment was even ratified. And the third pillar of their historical argument are three late 19th century cases, Jones, Garcia, and Lacey, each of which involved statutes that both raised the maximum and the minimum. Not a single one of them spoke about the Constitution. None of them purported to define what a legislature could do if it wanted to raise only the minimum, and that's it. And I would suggest to the Court that this kind of Gertrude Stein history, where there's really no there, there, is not sufficient to overturn the legislative prerogative to make uniform the findings of fact within a range. Kagan. Mr. Dreeben, can I take you back to the principles involved? Let's suppose that instead of this statute, which is 579, you had a statute which is 5 for carrying, 5 up to life, and then for brandishing, 40. All right? And maybe for discharging, 60. All right. So very large gap. Is your argument still the same? The constitutional argument is the same. I think this Court's decision in O'Brien suggests that unless the legislature were absolutely clear about it, the Court would conclude that those would be deemed elements. But suppose the legislature is absolutely clear. I did hear your last word. Those would be deemed elements. Under the decision in O'Brien where the machine gun finding raised the minimum to 30 years, the Court held that it should be deemed to be elements. Suppose the Congress is absolutely clear about it, and you say, and I think that you're right, you've got to be right about this. As a constitutional matter, it's the same. But the hypothetical sort of suggests exactly what you said our inquiry ought to be, is that in a world like that, the jury is, in fact, functioning only as a low-level gatekeeper. Isn't that right? And that the only reason we see it in the hypothetical a little bit more clearly is because the numbers are a bit more dramatic. I wouldn't suggest that the jury is being a low-level gatekeeper in that situation, because the jury's verdict alone, and this is a serious crime, exposes the defendant to a life sentence. This is a crime that involves either a predicate, Federal crime of violence, or a Federal drug trafficking crime, plus the use of the gun in it. And I think Congress could reasonably expect that the worse the use of the gun, the more extreme, the higher the corresponding penalty. And indeed, if a 924c violation is charged by itself and a defendant is an armed career criminal, then his sentencing range goes up to 360 months to life. Kagan. I mean, this is deeply incongruous, isn't there, where you have an apprendee rule which says if the maximum is, you know, if it's 5 to 7, and then the judge says 7 years and a day, we're going to take that out, but as a mandatory minimum that will leapfrog you from 5 to 40, doesn't get the same result? It's not incongruous if you look at it from the point of view of the fact that the jury verdict itself allows a life sentence. And if the defendant draws the proverbial hanging judge who, in his discretion or her discretion, wants to give that life sentence, the defendant knew from day one when he committed the crime that if the jury finds him guilty of it, he's exposed to a life sentence, and the court in Apprendi said structural democratic constraints will preclude legislatures, or at least discourage them, from assigning maximum sentences to crimes that are higher than what the legislature deems. Sotomayor, if the legislature had said 40 years for a machine gun, would we – how would we justify saying, no, that has to remain an element? Under your theory, the democratic process didn't work? No, I think it's – So how – what would we do in that situation? In that situation, the democratic process would have concluded that firearms, brandishing, discharge, or use of a machine gun is an extremely serious component of this crime. We know judges will take that into account in sentencing. We simply want them to take that into account in the same particularly harsh way. And in trying to achieve uniformity among judicial actors when finding facts at sentencing, which everybody knows that they will do, does not deprive the defendant of a right to a jury trial on the elements of the crime. It deprives him of the right to a judge who might show mercy under a particular set of facts. And that's simply not the right that's embodied in the Sixth Amendment. Breyer. That's – I don't know if you can add anything to this, but remember, I agree with you about the history, but I just apply it to Apprendi, too. And so the one – It's so bad he wants to extend it. And I thought – you're sure it's Gertrude Stein and not Dorothy Parker? I think you're probably right about that. But the – I'm thinking of this as, well, Apprendi, I see what they're thinking. They're thinking that once you have to add the extra fact to get above the otherwise ceiling, it's like a new crime. It isn't really a new crime, but it's like a new crime. Okay, but then I can say, well, once you have to really cut off that five years and less and really send him to jail to five years, hey, that's just like a new crime. It isn't really a new crime, but it's like a new crime. So why can't I say everything that we said about Apprendi here, except I can't deny what you say? The judge could have given the sentence anyway. That's absolutely right. But all the other things I can say. Is that true? Well, I agree that you can say them, Justice Breyer. I don't know. I mean, are they true? Respectfully, no. The critical point about Apprendi is by assigning the role of constitutional element status to a fact that increases the maximum, the Court has preserved the jury trial right against its reduction to essentially a formality on a particular subset of elements. And the relationship of a crime that's covered by Apprendi and the so-called base crime is like a greater included offense and a lesser included offense. Whereas in the mandatory minimum situation, we know that the judge will be engaged in sentencing. We know that the judge will find facts that extend beyond the elements of the crime to inform himself about how the basic crime is committed. We also know that different judges may treat those facts differently after finding them by the preponderance of the evidence. The mandatory minimum changes only one thing. It says, Judge, if you find this fact, brandishing or discharge, you will impose the same sentence as your neighboring judge down the hall. Not a different one based on your different perception of sentencing philosophy. So it allows the legislature to intervene after having defined a sufficiently serious enough crime and determine how the judges will treat those facts. Sotomayor Why is the legislature being deprived of that right if they give it to the jury? Sotomayor It seems to me that whether you give it to a jury or a judge, the legislature protects itself by declaring a minimum sentence. It's a determinate sentence, really. Dreeben There are many ways that a legislature could achieve a goal that allows the judge's fact-finding to carry more weight. For one thing, it could extend the maximum punishments and convert everything into an affirmative defense, which this Court said last week is constitutional. The point is whether the defendant has really been divested of a jury trial right when he loses the right to the mercy of a judge. Roberts Thank you, Mr. Dreeben. Ms. McGuire, you have five minutes remaining. McGuire It is the effect of the fact-finding that is important, not what it is called. A mandatory minimum does, in fact, increase the exposure that a defendant is exposed to because his range then goes from five to life, which was wholly authorized by the jury's verdict in this case, to seven to life, and that is an increase. And we are not talking about a right to leniency, but a right for the judge to consider the full range that the jury authorized. And I would note the language in Apprendi did, in fact, address this issue of range when it said one need only look to the kind, degree, or range of punishment to which the prosecution is by law entitled for a given set of facts. Thank you. Roberts Thank you, counsel. The case is submitted.